Andrés Sosa Reyes y Carmen González, demandantes y apelante el primero, *v.* José Fidalgo Díaz, demandado y apelado.

Núm. 7611.—*Sometido:* Junio 8, 1939. *Resuelto:* Febrero 2, 1940.

*E. H. F. Dottin,* abogado del apelante; *Federico García Veve,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Los demandantes tratan de reivindicar una casa y recobrar el importe de sus frutos y productos. Alegan que son dueños del inmueble en la proporción de un tercio para la demandante Carmen González y dos tercios para el otro demandante, Andrés Sosa Reyes; que la finca que se trata de reivindicar está inscrita a favor de los demandantes en el Registro de San Juan; que tiene un valor de $600.00; y que desde el 6 de septiembre de 1934 el demandado, sin derecho ni título para ello, detenta y retiene la posesión material de la finca, negándose a entregarla a sus dueños, los demandantes. En una segunda causa de acción se pide sentencia por el importe de los frutos y productos de la finca.

La contestación del demandado presenta las siguientes defensas:

1ª. Que la escritura por la cual doña Obdulia Sosa Vda. de González, hermana del demandante Sosa Reyes, traspasó a éste dos terceras partes de la finca, es simulada y falsa, habiendo sido otorgada con el único propósito de defraudar a los acreedores de dicha señora González y sin que mediara entrega alguna del precio que se hizo figurar en la escritura.

2ª. Que el demandante Sosa Reyes está impedido de negar la simulación de dicho traspaso, por haber inducido a todo el mundo, por sus actos y conducta, a creer en dicha simulación.

3ª. Que el demandado posee la finca como dueño por haberla adquirido por compra en pública subasta y mediante escritura otorgada por el márshal de la Corte Municipal de Carolina, en septiembre 10, 1934, en el caso seguido en dicha corte por Angel Fidalgo contra Obdulia Sosa Vda. de González, en cobro de dinero.

4ª. Que los demandantes jamás han estado en posesión de la finca ni tienen interés alguno en la misma.

5ª. Que el demandado es un tercero de buena fe, por haber comprado en subasta pública, por dinero efectivo y bajo la certeza de que la señora González era la dueña de la finca, por así haberlo ella demostrado por sus actos y conducta; y que en la fecha de la adquisición por el demandado, la finca no aparecía inscrita en el Registro, habiéndose anotado el embargo con el defecto subsanable de no estar inscrito el inmueble.

Visto el caso, la Corte de Distrito de San Juan dictó sentencia en la forma siguiente:

1. Declarando con lugar la demanda de Carmen González en cuanto a la reivindicación de una tercera parte de la finca, y sin lugar, por falta de prueba, en cuanto a la reclamación de frutos; y condenando al demandado en costas, más $75.00 para honorarios de abogado.

2. Desestimando en todas sus partes la demanda de Andrés Sosa Reyes y condenando a éste al pago de las costas, más $75.00 por concepto de honorarios de abogado, por entender el juez sentenciador que hubo temeridad y malicia al radicar la demanda.

No conforme el demandante Sosa Reyes interpuso el presente recurso, en el que sostiene que la corte inferior erró:

1º. En la apreciación de la prueba.

2°. Al declarar que al demandado le corresponden dos terceras partes de la finca.

3°. Al declarar que el demandante Sosa Reyes está impedido (*estopped*) por su silencio y acción tardía de ejercitar esta acción reivindicatoria.

4°. Al eximir al demandado de los efectos de la doctrina de *caveat emptor* y declararlo tercero de buena fe.

Discutiremos los alegados errores en el mismo orden de su señalamiento.

De la prueba aparece que la demanda de Angel Fidalgo contra Obdulia Sosa en cobro de un pagaré por $309.93 fué radicada el 1 de febrero de 1934; que el emplazamiento fué diligenciado y el embargo practicado al día siguiente; que el 29 de enero, tres días antes de iniciarse el pleito, Obdulia Sosa vendió a su hermano Andrés Sosa su participación de dos terceras partes en la finca embargada, por $500 que la vendedora confesó haber recibido antes del otorgamiento; que habiéndose vendido la finca embargada, en pública subasta, al demandado José Fidalgo Díaz, éste pagó por ella en efectivo la suma de $330.80, tomando posesión del inmueble el 10 de septiembre de 1934; que Obdulia Sosa no desocupó la finca hasta fines de octubre del mismo año; que durante todo el tiempo transcurrido desde la iniciación del pleito en febrero primero hasta la toma de posesión, nada se dijo a los hermanos Fidalgo sobre la venta hecha por Obdulia Sosa a su hermano Andrés, a pesar de que el mismo notario que autorizó la escritura de venta fué quien actuó como abogado defensor de Obdulia Sosa; y que la referida escritura de venta no fué presentada al registro hasta el 2 de noviembre del 1934, o sea nueve meses después de su otorgamiento y cuando ya el comprador Fidalgo había tomado posesión del inmueble.

Para probar que la venta que le había hecho su hermana Obdulia no había sido a título gratuito y que había mediado precio, el demandante ofreció su propio testimonio y el de dos testigos que declararon haber presenciado la entrega de

parte del precio, pero al ser repreguntados admitieron que lo sabían por referencia de los mismos hermanos Sosa. La corte inferior estimó que la prueba aducida era insuficiente para justificar la entrega del precio con anterioridad al otorgamiento de la escritura de venta. Y exponiendo las razones que tenía para no dar crédito a la declaración del demandante y sus testigos, se expresó así:

"Son tantas las circunstancias especiales que concurren en este caso demostrativas de fraude y simulación, que tendríamos que cerrar los ojos a la realidad para poder dar crédito a la historia que trata de imponernos el demandante. Obsérvese en primer término que la demanda de Angel Fidalgo se radicó, como ya hemos dicho, el jueves 1 de febrero de 1934, habiéndose diligenciado el emplazamiento al siguiente día, y precisamente el lunes de la misma semana, 29 de enero, se otorgó la escritura de compraventa a favor del demandante. No queremos lanzar sombra sobre nadie, pero es lo cierto que ni siquiera tenemos la garantía de los índices notariales como la hubiéramos tenido si la escritura se hubiera otorgado dos o tres semanas antes de la radicación del pleito. La escritura se otorgó ante el mismo notario que 10 días después compareció como abogado en representación de la demandada, oponiéndose a las pretensiones del demandante Angel Fidalgo. Nada se dice al demandante Fidalgo sobre el título de la finca que el mismo 2 de febrero fué embargada en aseguramiento de sentencia. No comparece Andrés Sosa, ahora demandante, a defender sus derechos dominicales a pesar de que sabía que la finca había sido embargada. Se anunció por fin la subasta y nada tampoco hace. Se celebra la subasta y se adjudica la finca a un tercero, José Fidalgo, y el ahora demandante permanece indiferente. Se entrega la finca al licitador, la desocupa después Obdulia, recibiendo $25.00 para mudarse, y ni ella ni su hermano el demandante comunican al demandado la existencia de la escritura de 29 de enero de 1934, no siendo hasta el 2 de noviembre del mismo año, que a pesar de todas estas circunstancias que hubieran puesto en movimiento al hombre más despreocupado, se presentó en el Registro de la Propiedad la referida escritura a favor de Andrés Sosa.

"Esta inusitada indiferencia en la defensa de sus intereses, indiferencia que no se armoniza con la actitud del demandante al exigir a su hermana al entregarle los últimos $200.00 no un simple documento privado sino un título de venta con la solemnidad de una escritura pública, sólo nos la explicamos por una de estas dos razones:

o tenía el ahora demandante poca confianza en la justicia de su causa, de tal manera que temía recurrir a los tribunales en defensa de derechos que no tenía, o su propia conciencia sellaba sus labios y ataba sus manos para que no arrebatase a otro lo que legítimamente le correspondía.

"No ignoramos que una mera sospecha por fuerte o bien fundada que sea no es suficiente para sostener que un traspaso o venta sea otorgado en fraude de acreedores. *Méndez Vaz* v. *De Choudens,* 35 D.P.R. 564; pero tampoco ignoramos que el fraude generalmente amañado y preparado con toda la previsión que la mente humana puede concebir para evitar su descubrimiento, raras veces, si no nunca, puede probarse con evidencia directa. Por eso, cuando como en este caso además de las circunstancias del parentesco entre vendedora y comprador, circunstancia que obliga a mirar con cautela la transacción, concurren todas las demás que hemos expuesto, extrañas todas a la forma en que ordinariamente se conducen los hombres en sus actuaciones diarias, tenemos que declarar que en esta acción reivindicatoria el demandante no ha acreditado cumplidamente el dominio que alega tener sobre las dos terceras partes de la finca en controversia, siéndole de perfecta aplicación la máxima *actore non probante, reus est absolvendi.*"

No nos sentimos inclinados a resolver que haya habido error en la apreciación de la prueba. Su lectura deja en el ánimo la impresión de que en el traspaso hecho por Obdulia a su hermano Andrés no medió precio o consideración alguna. Y siendo esto así, es aplicable la doctrina establecida en *Colón* v. *Schlüter,* 48 D.P.R. 879, 881, en cuyo caso este tribunal se expresó así:

"En los casos de *García* v. *Banco Popular,* 39 D.P.R. 854, y de *Lebrón* v. *F. Fresno & Co.,* 39 D.P.R. 901, y también en el de *Santini Fertilizer Co.* v. *Burgos,* 34 D.P.R. 869, hemos declarado que el artículo 1264 de nuestro Código Civil dispone que se presumen celebrados en fraude de acreedores los contratos por los cuales el deudor enajena bienes a título gratuito, y que según la sentencia del Tribunal Supremo de España de 20 de febrero de 1899 (86 J. C. 328) se entenderá que no medió precio ni su equivalente en los contratos cuando el notario no dé fe de su entrega, o si confesando los contratantes haberse ésta verificado con anterioridad no se justificare el hecho: también dijimos que esos contratos tendrán la presunción de

haber sido otorgados a título gratuito a menos que se pruebe que el precio fué entregado.''

No habiendo sido destruída la presunción de fraude, mediante prueba fehaciente de la entrega del precio, la corte inferior no erró al declarar que el demandado era dueño de las dos terceras partes que en la finca correspondían a doña Obdulia Sosa, y no cometió por tanto el segundo error que se le imputa.

■ Desestimados los dos primeros señalamientos de error, el tercero carece de importancia y no merece seria consideración. El silencio e inacción del demandante apelante mientras se tramitaba la demanda contra su hermana y se embargaba y vendía la finca que él había comprado tres días antes de iniciarse el pleito; el hecho de que Obdulia Sosa permaneciera en posesión de la finca después de haberla vendido al demandante y hasta que fué desalojada por el demandado, quien se vió obligado a pagarle los gastos de mudanza; y la tardanza de cerca de dos años en reclamar la finca, son circunstancias que la corte sentenciadora podía y debía tomar en cuenta al formar su opinión en cuanto a la buena o mala fe del traspaso hecho entre los hermanos Sosa.

■■ Aceptamos como buena la jurisprudencia citada por el apelante en relación con la doctrina de *caveat emptor,* según la cual el comprador en una subasta pública compra a su riesgo y adquiere solamente el mismo título e interés que en la propiedad vendida tenía el deudor por sentencia. Si el traspaso hecho por la deudora Obdulia Sosa a su hermano el demandante apelante pudiese ser sostenido como un traspaso hecho de buena fe y por justa causa, sin el propósito de defraudar a los acreedores de la citada deudora, entonces podría decirse que el demandado Fidalgo compró a su riesgo, y que no adquirió nada porque la deudora ya nada tenía. Habiendo resuelto la corte inferior, a nuestro juicio correctamente, que el traspaso fué simulado para defraudar al acreedor Fidalgo, debe sostenerse en consecuencia que en

cuanto a dicho acreedor la señora Obdulia Sosa continuó siendo dueña de la finca y que todo su derecho, título e interés sobre la misma pasó por virtud de la venta judicial al comprador en la subasta, quien adquirió un título superior al que obtuvo el demandante por virtud del traspaso simulado. Cuando el demandante no ostenta un título superior al del demandado, no procede la reivindicación. *Santiago* v. *Santiago*, 28 D.P.R. 960.

*La sentencia recurrida debe ser confirmada.*

El Juez Asociado Sr. De Jesús no intervino.