| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>Panel VIII | | |
| LUNA RESIDENTIAL II, LLC<br>Peticionaria<br><br>v.<br><br>MARÍA ELENA GARCÍA TORRADO<br>Recurrida | KLCE202401067 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Guaynabo<br><br>Caso Núm. GB2024CV00532<br><br>Sobre:<br>Cobro de Dinero y Ejecución de Hipoteca |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Adames Soto, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de febrero de 2025.

Comparece Luna Residential II LLC., (Luna Residential o parte peticionaria), mediante recurso de *certiorari,* solicitando la revisión de una *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Guaynabo, (TPI), el 13 de agosto de 2024. Mediante esta, el foro primario le concedió un término de veinte (20) días a la parte peticionaria para que presentara evidencia del negocio jurídico mediante el cual alegó que obtuvo la acreencia cuyo cobro requería, pues *el endoso en que está predicada la causa de acción de la parte demandante,* (Luna Residential)*, consta en folio independiente, sin dato alguno que permitiera correlacionar con el préstamo hipotecario*[1].

Por los fundamentos que expondremos, hemos decidido expedir el auto de *certiorari* y *revocar* la *Orden* recurrida.

---

[1] Apéndice III del recurso de *certiorari*, pág. 82.

## I. Resumen del tracto procesal

El 24 de julio de 2006 la señora María Elena García Torrado (señora García Torrado o parte recurrida), suscribió un pagaré hipotecario a favor de First Mortgage Capital. Dicho pagaré fue garantizado por una hipoteca, mediante la escritura número quinientos veinte nueve (529), sobre el inmueble localizado en el Condominio Los Frailes (La Villa Garden Apartments), Apartamento 317-H, Barrio Frailes Altos, Guaynabo, PR 00969.

Más adelante operó cambio de acreedor, en la persona de Banco Santander Puerto Rico (Santander). Así, el 15 de septiembre de 2009, Santander y la señora García Torrado modificaron los términos del préstamo hipotecario antes descrito, mediante la escritura número cuatrocientos veinte (420), en lo referente al interés y fecha de vencimiento. Transcurridos varios años, el 30 de abril de 2019, Santander y la parte recurrida modificaron nuevamente los términos del préstamo hipotecario. Como parte de la referida modificación, la señora García Torrado liberó un segundo pagaré hipotecario por la suma de nueve mil ochocientos sesenta y siete dólares ($9,867.00), garantizado por una segunda hipoteca constituida mediante la escritura número ciento sesenta y cuatro (164), el 30 de abril de 2019.

Luego, el 14 de junio de 2024, Luna Residential instó *Demanda* en cobro de dinero y ejecución de hipoteca en contra de la señora García Torrad, aduciendo que era el custodio de los pagarés mencionados, por tanto, la entidad con derecho a exigir el cumplimiento de los tales. A tenor, presentó copia de ambos pagarés, alegando que se trataba de copias fieles y exactas, haciéndolos disponibles para ser inspeccionados por el Tribunal y por la parte recurrida, si así lo solicitaban.[2] Junto a las referidas copias fueron incluidos copias de sendos *Endorsement to*

---

[2] Apéndice 1 del recurso de certiorari, págs 5-77.

*mortgage note*, firmado por una presunta persona autorizada por el Santander, aseverando, en lo pertinente, lo siguiente, *pay to the order o Luna Residential II LLC*[3]. Establecido ello, alegó que la recurrida había incumplido con los términos del préstamo a los que se había obligado, pues dejó de efectuar los pagos acordados. En consecuencia, el peticionario declaró vencida y exigible la deuda, solicitando como remedio al Tribunal que ordenara el pago de lo debido.

De conformidad, el 1 de agosto de 2024, Luna Residential presentó una *Moción Sometiendo Emplazamiento Diligenciado y en Solicitud de Paralización*. En esta acreditó que la señora García Torrado fue emplazada personalmente el 24 de julio de 2024, y solicitó la paralización de los procedimientos por un término de sesenta (60) días, pues había una solicitud completada para evaluar alternativas de mitigación de pérdidas.

Fue a partir de esta última solicitud que, el 13 de agosto de 2024, el foro recurrido emitió la *Orden* cuya revocación se nos solicita, disponiendo lo siguiente:

> Enterado. Toda vez que el endoso en que está predicada la causa de acción de la parte demandante consta en folio independiente, sin dato alguno que permita correlacionar con el préstamo hipotecario, se concede plazo de 20 días a la parte demandante para presentar evidencia del negocio jurídico mediante el cual alega obtuvo la acreencia.

En vista de lo anterior, el 30 de agosto de 2024, la parte peticionaria presentó una *Moción Solicitando Reconsideración y/o Señalamiento de Vista de Inspección de Pagaré*. En su contenido, luego de citar la Sección 2-204(a) de la Ley de Transacciones Comerciales, *infra*, adujo que a la copia fiel y exacta del pagaré hipotecario incluida en la *Demanda* se le había adherido una hoja en la cual se mostraba el endoso de Santander Financial Services, Inc. a favor de Luna Residential. Arguyó que, por virtud de la Ley de Transacciones Comerciales, *infra*,

---

[3] *Íd.,* pags. 11 y 77.

dicha hoja añadida formaba parte integrada del instrumento negociable. En la alternativa, solicitó una vista de inspección del pagaré para que el TPI pudiese examinar el original.

Sin embargo, el foro primario declaró *No Ha Lugar* a la moción de reconsideración.

Es así que Luna Residential recurre ante nosotros, mediante recurso de *certiorari,* señalando la comisión de los siguientes errores:

Primer Error: Erró el TPI e interpretó erróneamente la norma imperativa sobre instrumentos negociables al no aceptar el pagaré hipotecario válidamente endosado a favor de la parte peticionaria como evidencia de su legitimación activa para exigir su cumplimiento.

Segundo Error: Erró el TPI y se excedió en el ejercicio de su discreción al solicitar evidencia no contemplada en la norma interpretativa sobre instrumentos negociables para demostrar la legitimación activa de la parte peticionaria.

Tercer Error: Erró el TPI al no celebrar una vista evidenciaria para inspeccionar el original del pagaré hipotecario endosado a favor de la parte peticionaria, el cual constituye la mejor evidencia para establecer la legitimación activa de dicha parte.

Ante ello, mediante *Resolución* de 9 de octubre de 2024, le concedimos a la parte recurrida un término de veinte (20) días para exponer su posición. Transcurrido en exceso dicho término sin respuesta, damos por perfeccionado el recurso presentado y procedemos a resolverlo sin el beneficio de la comparecencia de la parte recurrida.

**II. Exposición de Derecho**

a.

Un instrumento negociable es un documento o un escrito que tiene la cualidad de ser transmitido a cambio de un precio o contraprestación. M.R. Garay Aubán, Derecho cambiario de Estados Unidos y Puerto Rico, Ponce, Ed. Revista de Derecho Puertorriqueño, 1999, pág. 1, según fue citado en *Cruz Consulting v. El Legado*, 191 DPR 499, (2014). En Puerto Rico los instrumentos negociables están regulados por la Ley Núm. 208-1995, conocida como la Ley de Transacciones Comerciales, según

enmendada, 19 LPRA sec.401 *et seq.*; *Cruz Consulting v. El Legado,* supra. Tal legislación especial se adoptó para *simplificar, clarificar y modernizar el derecho que rige las transacciones comerciales, permitir la continua expansión de las prácticas comerciales por medio de las costumbres, los usos y los acuerdos entre las partes y uniformar al derecho entre las diversas jurisdicciones existentes. DLJ Mortgage v. SLG Santiago-Ortiz,* 202 DPR 950, 963 (2019).

Los instrumentos negociables son documentos que se utilizan en el comercio y en la banca, denominados también como títulos o valores, títulos de crédito, efectos de comercio y documentos comerciales. *COSSEC et al. v. González López et al.,* 179 DPR 793, 799 (2010).

En específico, el *instrumento negociable* es definido como:

[U]na **promesa** o una orden incondicional **de pago de una cantidad específica de dinero**, con o sin intereses u otros cargos descritos en la promesa u orden, si el mismo: (1) es pagadero al portador o a la orden al momento de su emisión o cuando primero adviene a la posesión de un tenedor; (2) es pagadero a la presentación o en una fecha específica; y (3) no especifica otro compromiso o instrucción por parte de la persona que promete u ordena el pago que no sea el pago del dinero, pero la promesa u orden puede contener (i) un compromiso o poder para dar, mantener o proteger colateral para garantizar el pago, (ii) una autorización o poder al tenedor para admitir sentencia o liquidar la colateral o disponer de ella de otra forma, o (iii) una renuncia al beneficio de cualquier ley que exista concediéndole una ventaja o protección a un deudor. (Ènfasis provisto). Sec. 2–104(a) de la Ley Núm. 208-1995, 19 LPRA sec. 504(a).

A partir de lo cual, nuestro Tribunal Supremo ha identificado al pagaré hipotecario como una *promesa,* es decir, *un compromiso escrito de pagar dinero suscrito por la persona que se obliga a pagar.* Sec. 2–103(a)(9) de la Ley Núm. 208-1995, 19 LPRA sec. 503(a)(9); *DLJ Mortgage v. SLG Santiago-Ortiz, supra,* 963. La venta o transmisión de los pagarés hipotecarios constituye una transacción al amparo del Capítulo 9 de la Ley de Transacciones Comerciales. *Íd,* pág. 965.

De hecho, los pagarés son unos de los instrumentos negociables modernos más utilizados. *Cruz Consulting v. El Legado, supra; COSSEC et al. v. González López et al.*, supra. Estos se distinguen entre los que contienen una fecha específica de vencimiento o no, o si son vencederos o pagaderos a la presentación. 19 LPRA secs. 508 y 509.

Por otra parte, nuestro alto Foro ha resaltado que *la negociabilidad es la característica medular de los instrumentos negociables y la fuente de su importancia para nuestras relaciones económicas. Des. Caribe v. Ven-Lour Enterprises*, 198 DPR 290 (2017). Por ello, la *Ley de Transacciones Comerciales* dispone lo pertinente a la cesión, negociación y exigibilidad de los instrumentos negociables. Véase, Capítulo 2, Sec. 2-101, 19 LPRA sec. 2-101 *et seq.* de la Ley Núm. 208-1995. En particular, la legislación bajo examen dispone que *se cede un instrumento cuando se entrega por una persona que no sea su emisor con el propósito de darle a la persona que lo recibe el derecho a exigir el cumplimiento del instrumento*. Sec. 2-203 de la Ley Núm. 208-1995, 19 LPRA sec. 553(a). Así pues, la cesión *confiere al cesionario cualquier derecho del cedente a exigir el cumplimiento del instrumento, incluyendo cualquier derecho que tuviese como tenedor de buena fe.* Sección 2-203 de la Ley Núm. 208-1995, 19 LPRA sec. 553(b). Un instrumento puede ser negociado de tenedor a tenedor sucesivamente. *Des. Caribe v. Ven-Lour Enterprises*, supra, pág. 299.

En la misma tónica, cabe aludir a la Sección 2-301 de la Ley Núm. 208-1995, 19 LPRA sec. 601, donde se dispone lo siguiente:

> "Persona con derecho a exigir el cumplimiento de un instrumento" significa: **(i) el tenedor del instrumento**, (ii) una persona que no es tenedor pero está en posesión del instrumento y tiene los derechos de un tenedor, o (iii) una persona que no está en posesión del instrumento pero tiene derecho de exigir el cumplimiento del instrumento de acuerdo con las disposiciones de la Sección 2-309 y de la Sección 2-418(d). Una persona puede ser una persona con derecho a exigir el cumplimiento del instrumento aunque la

persona no sea el dueño del instrumento o lo posea indebidamente. (Énfasis provisto).

Conforme a esto último, el estatuto también define al *tenedor* como: "la persona en posesión del mismo, si el instrumento es pagadero al portador o, en el caso de un instrumento pagadero a una persona identificada, si la persona identificada está en posesión del mismo". Sec.1-201 (20) de la Ley Núm. Ley Núm. 208-1995, 19 LPRA sec. 451(20). Por tanto, la persona con derecho a exigir el cumplimiento de un instrumento negociable es su tenedor. 19 LPRA sec. 601. Cuando el tenedor de un pagaré hipotecario negocia el instrumento válidamente, la hipoteca queda automáticamente transferida al nuevo tenedor. *Des. Caribe v. Ven-Lour Enterprises,* supra, pág. 300.

Se prueba ser tenedor de buena fe de un instrumento con la firma y la autenticidad de este. En una causa de acción para exigir el cumplimiento del instrumento, si se admite o se prueba la validez de las firmas, el demandante que lo produzca tiene derecho al pago si prueba ser el tenedor del pagaré. 19 LPRA sec. 608. De esta manera, si un instrumento es pagadero a una persona identificada, la negociación requiere la cesión de la posesión del instrumento y su endoso por el tenedor. Sec. 2-201 (b) de la Ley Núm. Ley Núm. 208-1995, 19 LPRA sec. 551(b). A su vez, el *endoso* aludido refiere a:

> [U]na firma, que no sea la de un signatario como firmante, librador o aceptante, que por sí sola o acompañada de otras palabras se añade en un instrumento con el propósito de (i) negociar el instrumento, (ii) restringir el pago del instrumento, o (iii) incurrir en la responsabilidad del endosante respecto al instrumento, pero independientemente de la intención del signatario, una firma y las palabras que la acompañen es un endoso a menos que las palabras que acompañan la firma, los términos del instrumento, el lugar donde está la firma u otras circunstancias no ambiguas indiquen que la firma fue puesta con un propósito distinto al de un endoso. **Para el propósito de determinar si una firma está añadida en un instrumento, un papel adherido al instrumento se considera parte del instrumento**. (Énfasis provisto). Sec. 2-204 (a) de la Ley Núm. Ley Núm. 208-1995, 19 LPRA sec. 554(a).

Aunque resulte repetitivo, valga resaltar la última oración que precede, en el sentido de que, para determinar si una firma está añadida en un instrumento, ***un papel adherido a este se considera parte de él***. Íd. A lo que cabe añadir que ***el tenedor de un instrumento negociable tiene a su favor la presunción legal de que el pagaré es válido y de que fue otorgado por causa justa y onerosa***. (Énfasis provisto). *Pereira v. Commercial Transport Company, Inc.*, 73 DPR 326, 330 (1952). A partir de este principio, no puede exigirse al tenedor que alegue y presente prueba para establecer que es dueño del pagaré; tampoco de que es tenedor de buena fe, ni cuál es la causa onerosa específica que permitió su adquisición. La sola posesión equivale al título y le da legitimación para presentarlo al cobro, porque advino a la vida del derecho como documento negociable con valor, y quien alegue lo contrario tendría el peso de la prueba para demostrarlo. *Arroyo Pratts v. Tribunal Superior*, 98 DPR 149 (1969).

**III. Aplicación del Derecho a los hechos**

a.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, nos habilita, a modo de excepción, para revisar órdenes o resoluciones provenientes del foro primario, cuando, en lo pertinente, se trate de una situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia. A ello se une que la Regla 40(E) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40(E), identifica como uno de los criterios a tomar en consideración en la determinación de si expedimos o no el auto de *certiorari* es, *si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*

Por las razones que explicaremos, juzgamos que en la controversia alzada por el peticionario acontecen ambas disposiciones reglamentarias

citadas, lo que nos coloca en posición de intervenir con la resolución interlocutoria recurrida, expidiendo el auto discrecional solicitado.

b.

Los datos procesales de importancia son sencillos, Luna Residential presentó una *Demanda* contra la señora García Torrado, alegando ser la entidad con derecho a exigir el cumplimiento del pagaré suscrito por esta para garantizar la hipoteca, por ser su tenedor legítimo. En vista de dicha aseveración, la parte peticionaria incluyó junto a la *Demanda* una *copia fiel y exacta* del original de dicho instrumento negociable, que, a su vez, estaba acompañado de un *Endorsement to mortgage note,* o *allonge.* En este último documento se indicaba lo siguiente:

GB2024CV00532 14/06/2024 04:51:01 pm Entrada Núm. 1 Página 2 de 2

**ENDORSEMENT TO MORTGAGE NOTE**

Pay to the order of **LUNA RESIDENTIAL II LLC**, without recourse, representations or warranties, express or implied, of any kind or nature.

SANTANDER FINANCIAL SERVICES, INC.

By: _____
Name: Rafael S. Bonilla
Title: Authorized Representative

Sin embargo, a todas luces, el TPI no quedó satisfecho con el *Endorsement to mortgage note,* el cual identificó como un *folio independiente*, a los fines de correlacionar el pagaré con el referido endoso. En consecuencia, ordenó a Luna Residential presentar evidencia documental adicional del negocio jurídico a través del cual obtuvo dicha acreencia, es decir, de la manera en que advino en tenedor del referido instrumento.

No obstante, lo cierto es que a Luna Residential, como tenedor de copia del instrumento negociable, lo acompaña la presunción legal de que dicho pagaré es válido y de que fue otorgado por causa justa y onerosa. *Pereira v. Commercial Transport Company, Inc., supra.* Cónsono con lo cual, el mismo alto Foro también advirtió que **no** puede exigirse al tenedor que alegue y presente prueba para establecer que es dueño del pagaré, tampoco de que es tenedor de buena fe, ni cuál es la causa onerosa específica que permitió su adquisición, según lo pretendió hacer en el caso ante nosotros el TPI. *Arroyo Pratts v. Tribunal Superior*, supra.

Además, con relación a la preocupación puntual del foro recurrido sobre el endoso incluido en folio independiente por Luna Residential, como medio para correlacionar su alegada acreencia con el instrumento negociable incluido, baste reiterar que por virtud de ley especial que gobierna la cesión de los instrumentos negociables, *para el propósito de determinar si una firma está añadida en un instrumento,* ***un papel adherido al instrumento se considera parte del instrumento***. (Énfasis provisto). Sec. 2-204 (a) de la Ley Núm. Ley Núm. 208-1995, 19 LPRA sec. 554(a). Entonces, habiendo este Foro intermedio examinado el *Endorsement to mortgage note* incluido en la *Demanda*, determinamos que correspondía reputarlo como *parte del pagaré presentado, ergo*, el TPI **no** debió considerarlo como un *folio independiente,* y en ello incidió.

A pesar de que lo expuesto constituye el estado de derecho vigente, lo cierto es que desde la presentación de su *Moción solicitando reconsideración y/o señalamiento de vista de inspección de pagaré*, Luna Residential ha mostrado disposición para que el TPI tuviera la oportunidad de examinar el original del pagaré y así despejar dudas sobre la legitimación activa de quien se alegaba era su tenedor. En idéntica tónica, Luna Residential reiteró en el recurso de *certiorari* estar presto a mostrarle al Tribunal el original del pagaré, (lo que cabía esperar

del proceso), aunque en modo alguno ello significara tener que demostrar la causa onerosa por la cual advino en su tenedor.

Estamos contestes con tal postura propuesta por la parte peticionaria. Es decir, procede que se le conceda oportunidad para presentar el instrumento negociable original al Tribunal, colocando a este último en posición de verificarlo, con el propósito limitado ya explicado, lo que no supone exigirle documentación ulterior para evidenciar el negocio jurídico mediante el cual obtuvo la acreencia, o descartar el referido *allonge* como un endoso insuficiente.

## IV.  Parte dispositiva

Por los fundamentos expuestos, los que hacemos formar parte de este dictamen, expedimos el auto de *certiorari* y *revocamos* la *Orden* recurrida, emitida por el foro primario. Por tanto, se ordena que el asunto sea devuelto al foro recurrido, de manera que continúen los procesos de conformidad a lo aquí determinado.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones